## Walters v. Cities Service Oil Co.

*Mitchell H. Klevan* and *Frank Weitzman*, for plaintiff.

*John A. Fitzpatrick*, for defendant.

CAVANAUGH, *J.*, April 27, 1978—This action arises out of an incident which occurred on February 27, 1971, at a gasoline station located at Castor and Wingohocking Streets in Philadelphia. At the above time and place William Walters, plaintiff, was bitten by a dog on the premises of the gas station and suffered injuries for which he sued defendant, Cities Service Oil Company. This suit was tried before the Honorable James R. Cavanaugh and a jury on October 24, 1977. At the conclusion of all of the evidence, Judge Cavanaugh directed a verdict in favor of defendant. Plaintiff filed exceptions and oral argument was held on March 3, 1978. The sole issue presented is whether it was error to

direct a verdict in favor of defendant in light of the evidence presented at trial. Plaintiff's exceptions to the directed verdict are dismissed.

We have, of course, considered the evidence and reasonable inferences therefrom in the light most favorable to plaintiff in reviewing the record: Cox v. Equitable Gas Company, 227 Pa. Superior Ct. 153, 324 A. 2d 516 (1974). An examination of the transcript reveals that plaintiff's evidence consisted of the following facts. On the day in question, plaintiff was a passenger in a car which was operated by his brother-in-law, Record at 6. The brother-in-law decided to stop at the gas station in question to purchase gasoline, Record at 9. The service station in question displayed a "Cities Service" sign and a "Cities Service" insignia was on the gasoline pumps and on the attendants' uniforms, Record at 9-11. Plaintiff got out of the car while at the station and asked the attendant where a cigarette machine was located. Attendant directed plaintiff to the office, which plaintiff entered. When plaintiff entered the office he was attacked by a dog, Record at 11-12. Plaintiff produced no evidence that the service station in question on February 27, 1971, was owned by or leased by Cities Service or that Cities Service products were in fact being sold or distributed at the station. Plaintiff's counsel impliedly admitted this omission at trial, "That is the plaintiff's contention here, there is enough indicia of the fact that Cities Service Oil Company was present and the fact of whether or not they leased the premises or owned the premises is totally irrelevant," Record at 21. It is readily apparent that plaintiff failed to carry his burden of proof with respect to demonstrating any relationship between Cities Service and the gasoline station in question. In

fact, plaintiff does not assert that defendant owned or leased the premises in question, Record at 21 and 52.[1] The burden of establishing an agency relationship rests with the party asserting it: Girard Trust Bank v. Sweeney, 426 Pa. 324, 231 A. 2d 407 (1967).

Plaintiff attempts to prove his case against defendant by means of apparent authority or agency by estoppel.

" 'Apparent authority' is the power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted to the agent." Apex Financial Corp. v. Decker, 245 Pa. Superior Ct. 439, 443, 444, 369 A. 2d 483, 485 (1976). "Authority by estoppel occurs when a principal, by his culpable negligence, permits an agent to exercise powers not granted to him, even though the principal did not know or have notice of the agent's conduct." Apex, supra, at 486.

Implicit to both of these theories is the requirement of reliance and that this reliance must rest on some reasonable basis: Reifsnyder v. Dougherty, 301 Pa. 328, 152 Atl. 98 (1930); Bowman v. Home Life Insurance Co., 260 F. 2d 521 (3d Cir. 1958). There is no evidence presented anywhere in this case that would indicate any reliance by plaintiff upon the name of Cities Service. In fact, it was plaintiff's testimony that it was his brother-in-law's decision to stop at the gasoline station in question,

---

1. It should be noted that it was defendant's uncontroverted evidence that Cities Service had leased the premises in the past but that lease had expired on January 4, 1971, some 54 days before the occurrence of the incident at hand.

Record at 9. It is plaintiff's position that any vestige of ownership or control that remained after Cities Service left the premises makes Cities Service responsible for anything that occurred upon the premises. We hold that the facts of this case, assuming that there were Cities Services signs and uniforms worn by attendants, are insufficient to hold Cities Service liable for a dog bite incident which occurred on the property.[2] Perhaps the result would be different had plaintiff drove his car into the station and had received contaminated gasoline but that is not the case at hand.[3]

Finally, plaintiff cites the case of Gizzi v. Texaco Inc., 437 F. 2d 308 (3d Cir. 1971), to this court as authority for the proposition that the existence of Cities Service's signs and uniforms at a gas station exposes Cities Service to liability. We have studied the Gizzi opinion and find it to be distinguishable for a number of reasons. While the Gizzi case was a Third Circuit decision, it was decided under New Jersey law. Also, the facts of Gizzi are vastly different. In Gizzi, a service station operator sold to plaintiff a Volkswagen van which had been repaired by the station operator. Plaintiff in Gizzi was injured

---

2. While the evidence is not relevant to the issues at the present posture of the case, defendant did submit evidence to dispute plaintiff's testimony as to the existence of the Cities Service signs as Cities Service had changed its signs to a new logo, "Citgo" in the early 1960's, Record at 39. Defendant also testified that the color of the Cities Service station attendant's uniform was red, white and blue in 1971, Record at 48, and not green and white as plaintiff testified, Record at 19.

3. It must also be noted that plaintiff did not and apparently could not allege that he was unaware or unable to ascertain the identity of the owner and/or lessor of the station in question.

when the brakes failed to operate very shortly after purchasing the van. It is readily apparent that plaintiff in Gizzi relied upon the maintenance work performed by the station operator. There is no testimony in the case at hand to indicate any comparable reliance that Cities Service stations were safe from dog attacks. There was also evidence in Gizzi that the station operator routinely repaired and sold cars and that Texaco acquiesced in this practice. Texaco had actual knowledge of the operator's activities as Texaco's regional office was located across the street from the station in Gizzi. The service station in Gizzi also advertised that an "Expert foreign car mechanic" was on the premises. Texaco owned some of the equipment at the station in Gizzi and Texaco supplied Texaco insignias to the station employes to show that Texaco products were sold at the station. Additionally, there was evidence in Gizzi as to national advertising regarding the skills of personnel at Texaco stations, evidenced by the "Trust your car" ad program. Thus, it is clear that the overwhelming number of facts present in Gizzi are not present in the case at hand. The court in Gizzi also thought that the facts there did not amount "to an overwhelming case of liability," Gizzi at 310. The facts of the case at hand were simply insufficient for this case to be sent to the jury.

## ORDER

And now, April 27, 1978, upon consideration of plaintiff's exceptions to the directed verdict in favor of defendant, the briefs submitted thereon, and oral argument, it is hereby ordered and decreed that plaintiff's exceptions are dismissed.