**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5045-18T2

FLOYD CASTON, JR. and
MARY CASTON, h/w,

     Plaintiffs-Appellants,

v.

GERARD (JERRY) WALKER,
Individually and Trading As
ALTMAN & ALTMAN, and
GERARD M. WALKER &
ASSOCIATES, LLC,

     Defendants-Respondents.

_____

Argued December 16, 2019 – Decided January 10, 2020

Before Judges Messano, Ostrer and Vernoia.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2061-18.

Carlo Scaramella argued the cause for appellants.

John B. Kearney argued the cause for respondents (Kearney & Associates, PC, attorneys; John B. Kearney, on the brief).

PER CURIAM

After a fire devastated their home, Mary and Floyd Caston agreed to hire a public insurance adjuster. But, who they hired and why, are key issues in this case. The Castons contend that defendant Gerard Walker made them think they were hiring Altman & Altman (A&A), a long-established licensed public adjuster firm, which he owned. But, A&A was actually defunct for years. The Castons say that Walker's false misrepresentation induced them to do business with him. Under an A&A form contract they signed, they retained only A&A, and agreed to pay it an eight percent commission. With Walker's help, the Castons settled their insurance claim. In response to an A&A invoice, they remitted to Walker a check payable to A&A, which Walker deposited.

The Castons eventually sued Walker. They claimed he committed common law fraud, and violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. They also alleged that Walker negligently advised them to withhold paying their mortgage until they received their insurance proceeds. That caused them to incur several thousand dollars in additional bank fees and charges.

Walker denied any misrepresentation or negligence. He contended the Castons suffered no harm and that they underpaid him. He counterclaimed for additional commissions.[1]

Before the parties completed discovery, the trial court granted Walker's motion to dismiss the fraud and statutory counts. The court separately denied the Castons' motion for reconsideration, and to dismiss the counterclaim.

On leave granted, the Castons appeal from both orders.

I.

We review de novo a trial court order on a motion for summary judgment, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010), or for dismissal for failure to state a claim under Rule 4:6-2(e), see Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). Applying that standard, we reverse the first order and that portion of

---

[1] Walker attempted to explain his use of the A&A documents in a certification prepared after the court entered the orders on appeal, which he included in an appendix to his opposition brief. We do not consider it. See Wallach v. Williams, 52 N.J. 504, 505 (1968) (stating that an appellate court is "confined to the record made in the trial court"). Likewise, we do not consider Walker's deposition testimony that the Castons submitted in response, in an appendix to their reply brief. See Townsend v. Pierre, 221 N.J. 36, 45 n.2 (2015) (refusing to consider deposition testimony not presented to trial court).

the second order denying the Castons' reconsideration motion, and affirm the second order's denial of the Castons' motion to dismiss Walker's counterclaim.

## II.

We first address the trial court's failure to formally convert Walker's dismissal motion into one for summary judgment. The Castons had filed a discovery motion, seeking redress for Walker's failure to appear for a deposition. In a cross-motion, Walker "refiled" a previously unsuccessful motion to dismiss. However, Walker included material outside the pleadings – the Castons' interrogatory answers. That prompted plaintiffs to do the same. In their opposition to Walker's cross-motions, the Castons included documents to substantiate their misrepresentation claims. But, they complained that Rule 4:6-2 obliged the court to convert the motion to one for summary judgment and extend them more time to respond. They also contended that the summary judgment motion was premature, as plaintiffs had not completed discovery.

We are not satisfied that the court followed Rule 4:6-2. If a party presents matters outside the pleading to support a motion to dismiss for failure to state a claim, the court may exclude that material. See R. 4:6-2. If the court does not exclude the material, as in this case, then "the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46," the summary

judgment rule.  Ibid.  The court must then "view the record in the light most favorable to the non-moving party, which is the standard applicable to summary judgment."  Roa v. Roa, 200 N.J. 555, 562 (2010).  However, before entering summary judgment, the court shall give "all parties . . . reasonable opportunity to present all material pertinent to such a motion."  R. 4:6-2.

Here, the court did not formally convert the motion for summary judgment; it did not extend the time for the Castons to respond; and it did not expressly apply the summary judgment standard.  The court's intention is also unclear from the face of its order.  The order does not grant partial judgment in Walker's favor.  Rather, it states that counts I, II, and III are dismissed, without stating whether it was with prejudice.

Nonetheless, we shall review the trial court's order under the summary judgment standard, and view the record in a light most favorable to the Castons as the non-moving parties.  Roa, 200 N.J. at 562.

To maintain their statutory and common law fraud claims, the Castons must show that, in one form or another, Walker's misrepresentation caused them harm.  An essential element of common law fraud is proof of reliance damages.  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).  To prosecute their private CFA claim, the Castons must show that Walker's statutory or regulatory

violation, caused an "ascertainable loss." N.J.S.A. 56:8-19; Thiedemann v. Mercedes-Benz U.S.A., LLC, 183 N.J. 234, 248 (2005); Weinberg v. Sprint Corp., 173 N.J. 233, 240 (2002); Cox v. Sears Roebuck & Co., 138 N.J. 2, 21-23 (1994); Pisack v. B & C Towing, Inc., 455 N.J. Super. 225, 240-41 (App. Div.), certif. granted, 235 N.J. 477 (2018). The CFA violations here are the alleged misrepresentations and deception about A&A, see N.J.S.A. 56:8-2 and N.J.A.C. 13:45A-9.2; and the use of an assumed name, N.J.S.A. 56:1-2.

To sustain a TCCWNA claim, the Castons must show they are "aggrieved consumers," that is, consumers who have "suffered some form of harm as a result of the defendant's conduct." Spade v. Select Comfort Corp., 232 N.J. 504, 522 (2018); see also Wright v. Bank of America, N.A., 456 N.J. Super. 328, 333 (App. Div. 2018). The statute prohibits a seller from utilizing a contract that "violates any clearly established right of a consumer or responsibility of a seller." N.J.S.A. 56:12-15. A seller violates a clearly established right by presenting a contract that violates the CFA. Spade, 232 N.J. at 518-20.

The Castons do not allege that had they not hired Walker, they would have paid less for adjustment services, or recovered more from their insurer. They contend that the mere entry of a contract with Walker satisfies the harm requirements. Yet, we need not reach that argument, because the Castons

6

alleged an additional source of harm. That is, the fees and penalties they incurred because Walker negligently advised them not to pay their mortgage while they awaited their insurance proceeds.

The Castons allege in their interrogatory responses that Walker's false representations about A&A as a viable entity "induc[ed] [them] to enter into a public adjustment contract with a non-existent entity, namely Altman & Altman, Inc., which had not been in existence for approximately thirty (30) years." They also allege that Walker negligently advised them "that insurance funds would be used to pay off the existing mortgage on [their] home and advised [them] not to make certain mortgage payments," which caused them to incur bank fees and charges. Absent the fraudulent inducement, they would not have suffered the harm his negligent advice caused. The Castons state in their interrogatory responses that they "reasonably and detrimentally relied upon the false and misleading statements and intentional omissions and thereby sustained damages."

Although the record lacks detail, we extend the Castons all favorable inferences, particularly in light of the circumstances under which the motion was heard. Notably, Walker did not seek dismissal of the Castons' negligence claim. Furthermore, Walker did not challenge the particularity of the Castons'

fraud pleading. Rather, his attorney assumed "for the purposes of the motion . . . [that] the use of the Atlman and Altman [name] was fraudulent." Walker's argument that the Castons received exactly what was promised – adjustment of their insurance claim – is belied by the Castons' negligence claim. They did not bargain for negligent advice.

We are satisfied that the Castons' interrogatory responses suffice at this stage to create a genuine issue of material fact and to defeat Walker's motion for partial summary judgment. The Court held in Gennari that the plaintiffs established the elements of common law fraud, including damages, where a builder's false representations about his experience induced home purchasers to contract with him and thereafter suffer damages arising from his shoddy work. Gennari, 148 N.J. at 610. Likewise, the Castons alleged that Walker's misrepresentations induced them to deal with him, and thereafter suffer damages, in the form of bank fees and penalties, arising from his negligent advice.

The fees and penalties also suffice as "ascertainable loss" under the CFA. They are "quantifiable or measurable." Thiedemann, 182 N.J. at 248. Extending the Castons all favorable inferences, they have demonstrated a "causal relationship between the unlawful conduct and the ascertainable loss." Bosland

v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).  The fees and penalties also satisfy TCCWNA's harm requirement.  A TCCWNA plaintiff "may be entitled to a remedy notwithstanding the absence of proof of monetary damages."  Spade, 232 N.J. at 523.  Proof of "adverse consequences" will suffice.  Id. at 523-24.

Therefore, we reverse the trial court's dismissal of the Castons' claims under the CFA, TCCWNA, and common law fraud, asserted in Counts I, II, and III of their complaint.

## III.

We turn to the Castons' appeal from the denial of their motion to dismiss Walker's counterclaim for additional fees.  Walker contends that the total amount of the Castons' loss was $282,088.65, but they paid a fee on $191,826.65, leaving a balance due of $7,220.96.[2]

The Castons' motion was styled as a motion to dismiss for failure to state a claim under Rule 4:6-2(e).  Yet, the Castons included various documents outside the record: their contract with A&A; the A&A invoice; and documentary evidence that A&A's license has been inactive since 2007 and its corporate charter had become void by proclamation in 1983.  The court declined to

---

[2]  We note that the invoice Walker rendered on an A&A form only sought a fee on the $191,826.65 settlement amount.

consider the material, unless it was resubmitted with a formal motion for summary judgment.[3]  Focusing solely on the pleading, the court found that a claim had been stated.

We agree.  We indulgently read Walker's counterclaim "'to ascertain whether the fundament of a cause of action may be gleaned.'"  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).  We assume, solely for purposes of the motion, that Walker was legally entitled to collect a commission for the public adjustment services he provided; and that, as Walker alleged, the Castons underpaid.

Upon the filing of an appropriate summary judgment motion, the trial court may be obliged to determine whether, as the Castons contend in their factual submissions, A&A was not licensed to do business as public adjusters, and their contract was with A&A, not Walker.  The trial court may also need to decide whether, as a legal matter, Walker was barred from enforcing any alleged

---

[3]  We recognize that this contrasted with the court's permissive response when Walker submitted beyond-the-pleadings materials to support his dismissal motion.  However, we shall not disturb the court's exercise of discretion, particularly inasmuch as the Castons may secure a decision on the counterclaim upon filing a formal summary judgment motion.

duty under a contract with A&A, because A&A was unlicensed. We express no opinion on the issue. Likewise, we express no opinion on whether Walker would be liable to refund any commission already collected, or whether he would be entitled to a claim of quantum meruit absent an enforceable contract.[4]

Reversed in part; affirmed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Notably, the Castons did not assert a separate cause of action for a refund based on a claim that their contract with A&A was unenforceable under the public adjusters statute and regulations.

A-5045-18T2